**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **GEORGE E. RAY** | § | **PLAINTIFF** |
| | § | |
| **v.** | § | **CIVIL NO.: 1:13cv23-HSO-RHW** |
| | § | |
| **HUNTINGTON INGALLS INDUSTRIES, INC. and HUNTINGTON INGALLS INCORPORATED** | §<br>§<br>§<br>§ | **DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

BEFORE THE COURT is Defendant Huntington Ingalls Industries, Inc.'s Motion for Summary Judgment [49] filed January 10, 2014. Plaintiff filed a Response in Opposition [57] to the Motion on February 7, 2014, and Defendant filed its Rebuttal [63] on February 26, 2014. Having considered the parties' submissions, the record, and relevant legal authorities, the Court is of the opinion that the Motion should be granted and Plaintiff's claims against Defendant should be dismissed with prejudice.

I. BACKGROUND

Plaintiff George Ray has been employed by Defendant Huntington Ingalls Industries, Inc., in its human resources department at its Pascagoula, Mississippi, facility for over forty-two years. Decl. of George Ray a [57-2]. In 2008, Plaintiff was classified as a "Staffing Representative 4" responsible for preparing employment requisitions for non-craft, professional positions. Pl.'s Dep. 116:64-10, 125:20-24 [49-1]. At that time, Plaintiff was under the immediate supervision of Vickie

Crockett who reported to Kristen Barney. *Id*. at 119:10-14 [49-1]. Plaintiff attributes the majority of the problems of which he complains to the time he worked under the supervision of Ms. Crockett and Ms. Barney. *Id*. Ms. Barney was critical of Plaintiff's work product, and in 2008, she informed Plaintiff that he was going to be transferred from professional recruiting to craft recruiting. *Id*. at 85:4-21. Believing that Ms. Barney's actions were motivated by racial discrimination, Plaintiff filed an internal complaint with Defendant in October 2008 that he was being subjected to racial discrimination. *Id*., Pl.'s Mem. in Supp. of Resp. to Mot. for Summ. J. 10-11 [58]. Plaintiff recalls that Defendant conducted an investigation at the end of 2008, and he was not transferred at that time. Pl.'s Dep. at 86:20-87:13 [49-1].

Due to continuing perceived deficiencies in his performance, Plaintiff was placed on a Performance Improvement Plan ("PIP") in May 2011. Decl. of Edmond Hughes 1 [49-3]. Plaintiff did not sign the PIP, and Defendant contends he did not complete the PIP. Attach. G [49-6], Pl.'s Dep. 131:15-20 [49-1]. In 2011, Plaintiff was transferred from professional recruiting to craft recruiting, a position which made Plaintiff responsible for handling requisitions for hourly employment craft positions. Pl.'s Dep. 72:18-73:24 [57-1], 125:11-24 [49-1]. Despite a change in the type of recruiting he was performing, Plaintiff acknowledged that his title remained the same. *Id*. at 125:11-19 [49-1]. Plaintiff was glad to be transferred to craft recruiting because he was no longer being supervised by Ms. Barney. *Id*. at 152:20-153:2 [63-1]. Plaintiff's salary has increased from $91,418.00 in 2008 to $99,907.00

in 2014, and he currently is the highest paid staffing representative at Defendant's Pascagoula facility. Decl. of Susan Jacobs 2 [49-2]. Plaintiff has never been demoted or terminated by Defendant. Pl.'s Dep. at 41:1-13, 71:17-20 [49-1].

Plaintiff nevertheless filed a charge with the Equal Employment Opportunity Commission ("EEOC") on September 12, 2011, stating that he believed he was being treated differently in terms of assignments, disciplinary actions, and pay because of his race and age. Charge of Discrimination [49-10]. After receiving a right to sue letter from the EEOC, Plaintiff filed this lawsuit advancing claims of racial discrimination under Title VII, 42 U.S.C. §§ 2000e-1 to -2000e-17, and age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 to -634 ("ADEA"). Compl. 1-3 [1-2]. Plaintiff also asserts claims for retaliation and hostile work environment under Title VII. *Id.*

On January 10, 2014, Defendant moved for summary judgment on grounds that Plaintiff was not subjected to an adverse employment action and thus he could not establish a prima facia case to support his claims under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-02 (1973). Mem. in Supp. of Mot. Summ. J. 16-25 [50]. Even if Plaintiff could establish a prima facia case as to his discrimination claims or his retaliation claim, Defendant contends that legitimate, nondiscriminatory reasons existed for its decisions related to Plaintiff. *Id.* at 19, 23. In opposing Defendant's Motion, Plaintiff posits that he suffered an adverse employment action when he was transferred from professional recruiting to craft recruiting, and that he has established a prima facie case. Pl.'s Mem. in Supp. of

Resp. to Mot. for Summ. J. 7-14 [58]. Plaintiff also claims that two comments made about black individuals, graffiti around Defendant's premises, various emails containing jokes about President Barack Obama, and an alleged threat that Plaintiff would be fired all created a hostile work environment. *Id*. at 14-15.

## II. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Technologies USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In considering a motion for summary judgment, the Court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E&P USA Inc. v. Kerr-McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).

"There is no material fact issue unless the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *RSR Corp. v. Int'l Ins. Co.*,

612 F.3d 851, 858 (5th Cir. 2010). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law[, and an] issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 477 (citing *Anderson*, 477 U.S. at 248). "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). "The court has no duty to search the record for material fact issues." *RSR Corp.*, 612 F.3d at 858. "Rather, the party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *Id*.

B. Analysis

1. Plaintiff's Discrimination Claims under Title VII and the ADEA

In Title VII cases, the *McDonnell-Douglas* inquiry follows a burden-shifting framework. *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (citations omitted). To establish a prima facie case of discrimination, a plaintiff must demonstrate the following elements: (1) membership in a protected class; (2) qualifications for the position at issue; (3) an adverse employment decision; and (4) replacement by someone outside the protected class or, in the case of disparate treatment, that he was subjected to less favorable treatment than employees not in the protected class. *Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001) (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d

398, 404 (5th Cir. 1999)). If a plaintiff demonstrates a prima facie case, this creates a presumption of discrimination and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Once the employer articulates a legitimate, nondiscriminatory justification, the burden shifts to the plaintiff to come forward with "substantial evidence" demonstrating that the proffered justification is a pretext. *Id.*

"The same evidentiary procedure for allocating burdens of proof applies to discrimination claims under" the ADEA. *Meinecke v. H & R Block of Houston*, 66 F.3d 77, 83 (5th Cir. 1995). For a plaintiff to establish a prima facie case, the first three elements are the same as those required under Title VII. *Id.* The fourth element requires a plaintiff to show that he "was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of [his] age." *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 318-19 (5th Cir. 1997) (quoting *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 992 (5th Cir. 1996)). A failure "to make out an adverse employment action for Title VII purposes . . . forecloses [an] ADEA claim[]." *Anthony v. Donahoe*, 460 F. App'x 399, 404 (5th Cir. 2012).

"[A]n adverse employment action consists of *ultimate employment decisions* such as hiring, granting leave, discharging, promoting, [] compensating[,]" and being demoted. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (citations and internal marks omitted) (emphasis in original). Written warnings

and a change in a plaintiff-employee's assignments have been held insufficient to establish an "adverse employment action" even if those assignments "were more hazardous than they would have been . . . ." *Luckman v. United Parcel Serv.*, 44 F. App'x 651, 2002 WL 1396934, at *1 (5th Cir. June 6, 2002) (citing *Breaux v. Garland*, 205 F.3d 150, 157 (5th Cir. 2000)). Similarly, the fact that employees were required to receive "ongoing informal counseling" and received "error reports" designed to make employees aware of the employer's requirements and applicable standards to which the employees' work must conform have been determined not to be sufficient to establish an "ultimate employment decision" and hence an "adverse employment action." *Jeffery v. Dallas Cnty. Med. Exam'r*, 37 F. Supp. 2d 525, 530 (N.D. Tex. 1999). In addition, an employee's complaints that she was given "less favorable work assignments" than other employees has not been considered an "ultimate employment decision." *Liddell v. Northrop Grumman Shipbuilding, Inc.*, 836 F. Supp. 2d 443, 456 (S.D. Miss. 2011) (quoting *Ellis v. Principi*, 246 F. App'x 867, 870 (5th Cir. 2007)).

The foregoing authorities make it clear that the actions of which Plaintiff complains do not constitute an "adverse employment action" cognizable under the discrimination provisions of either Title VII or the ADEA. The ongoing informal audits and reports of errors that Plaintiff received related to his work performance do not constitute an "ultimate employment decision." Email Correspondence [49-6]. The same is true with respect to Plaintiff's change in recruiting responsibilities from professional staffing to craft recruiting in 2011. Pl.'s Dep. 125:11-24 [49-1],

Decl. of Susan Jacobs 2 [49-2]. To the extent Plaintiff complains about not being selected to attend recruiting trips, the evidence shows that Plaintiff's not being selected to attend a recruiting trip was, at most, akin to being left to tend to "less favorable work assignments" which also does not establish a cognizable adverse employment action. Pl.'s Dep. 129:1-4 [49-1].

At bottom, Plaintiff offers no testimony or evidence indicating he was demoted, discharged, or forced to accept a decrease in compensation. In fact, Plaintiff's compensation has only increased from $91,418.00 in 2008 to $99,907.00 in 2014. Decl. of Susan Jacobs 2 [49-2]. Plaintiff cannot demonstrate a prima facie case of discrimination under either Title VII or the ADEA because he cannot establish an essential element of either claim, that he has suffered an adverse employment action. *Pegram*, 361 F.3d at 282 (citations omitted). Defendant is entitled to judgment as a matter of law as to Plaintiff's discrimination claims under Title VII and the ADEA.

2. Plaintiff's Retaliation Claim under Title VII

The antiretaliation provision of Title VII prohibits employers from discriminating against employees or job applicants on the basis that the individual opposed a practice made unlawful by Title VII or made a charge, testified, assisted, or participated in an investigation or proceeding under Title VII. *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (citing 42 U.S.C. § 2000e-3(a)). "To prevail on [a] retaliation claim, [a plaintiff] must establish that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, (3) there was a

causal connection between the two, and (4) the execution of a policy, custom, or practice of the city caused the adverse action." *Sharp v. City of Houston*, 164 F.3d 923, 932 (5th Cir. 1999) (citations omitted). In the context of Title VII's antiretaliation provision, an adverse employment action "depends on whether the act was materially adverse, meaning that it would 'have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Donahoe*, 460 F. App'x at 404 (quoting *Burlington*, 548 U.S. at 68).

Where a plaintiff claimed he was subjected to retaliation when his supervisor stated to two fellow employees that the plaintiff was "creating problems by filing EEO complaints," the Fifth Circuit concluded that the supervisor's conduct was not "materially adverse" because the statement was made only once, was not directed to the plaintiff, was not a threat of hostility, and did not suggest that the complaints be dropped. *Holloway v. Dept. of Veterans Affairs*, 309 F. App'x 816, 818-20 (5th Cir. 2009). The Court of Appeals has also determined that in a case where a plaintiff claimed that he was subjected to reprimands to which other employees were not and that he was transferred from one department to another as a result of his having made an EEOC charge, a claim for retaliation was precluded because the reprimands amounted to nothing more than trivial harms and the transfer did not affect the plaintiff's job rank or compensation. *Harrison v. Corrections Corp. of America*, 476 F. App'x 40, 45-46 (5th Cir. 2012). Finally, a post-tenure review of a professor's classroom teaching has been deemed insufficient to establish "materially adverse" conduct where the review was initiated due to vehement complaints about

the professor's methods and her previously having filed a discrimination complaint did not immunize her from review of questionable job performance. *Goring v. Bd. Of Sup'rs of Louisiana State Univ.*, 414 F. App'x 630, 633 (5th Cir. 2011).

In this case, Plaintiff claims he suffered retaliation for filing the internal complaint with Defendant regarding Ms. Barney in October 2008. Pl.'s Dep. 155:11-18 [49-1]; Pl.'s Mem. in Supp. of Resp. in Opp'n 10-11 [58]. It is doubtful that a reasonable jury could conclude that Plaintiff can legitimately contend that any of the conduct which took place between October 2008 and September 12, 2011, constituted actionable retaliation. To be legally significant, retaliatory conduct must be such as would dissuade a reasonable worker from making or supporting a charge of discrimination. *Donahoe*, 460 F. App'x at 404. The retaliatory conduct allegedly directed toward Plaintiff as a result of his October 2008 internal complaint did not dissuade him from making a charge to the EEOC on September 12, 2011. Under similar circumstances, courts have concluded plaintiffs could not establish retaliation. *See, e.g.*, *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442 (5th Cir. 2007) (concluding that a written warning to the plaintiff would not have dissuaded a reasonable worker from making a charge of discrimination because colorable grounds existed for the warning and the plaintiff subsequently filed a charge); *Johnson v. Watkins*, 803 F. Supp. 2d 561, 571 (S.D. Miss. 2011), *aff'd*, 472 F. App'x 330 (5th Cir. 2012) (concluding that "[n]o reasonable jury could conclude" that the employer's act of literally slapping the plaintiff on the wrist

"would dissuade a reasonable employee from making a complaint" because the plaintiff made a formal EEOC charge months after the incident) (citation omitted).

Moreover, the actions which Plaintiff relies upon in support of his retaliation claim do not rise to the level of materially adverse conduct. Although Plaintiff complains that he was subjected to reprimands for conduct similar to that committed by other employees who were not reprimanded, this fact alone is not sufficient. *Harrison*, 476 F. App'x at 45-46. Nor is the fact that Plaintiff was transferred to craft recruiting indicative of materially adverse conduct that would dissuade an employee from maintaining a claim of discrimination.[1] After the transfer, Plaintiff's compensation remained the same, the transfer was neither a promotion nor a demotion, and there is no evidence that, as a craft recruiter, Plaintiff had an increased or decreased chance of being promoted, receiving a raise, or being terminated. *See Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 485 (5th Cir. 2008) (concluding that the plaintiff's transfer was not materially adverse because there was no evidence that her new position was "more arduous or less prestigious[,]" her "subjective preference for a different position" was insufficient, and she admitted that "she did not view the transfer [as] a demotion"). The Court is of the opinion that Plaintiff has not shown the existence of an adverse employment

[1] To the extent Plaintiff opposes summary judgment based on the new theory that his transfer from professional recruiting to craft recruiting constituted an adverse employment action, there is no support for such a theory in the present record. Pl.'s Mem. in Supp. of Resp. to Mot. for Summ. J. 12-13 [58]. Plaintiff testified that the transfer made him "glad" because he was no longer under the supervision of Ms. Barney and Ms. Crockett. Pl.'s Dep. 152:20-153:2 [63-1]. Consequently, Plaintiff's attempt to rely upon the transfer as evidence of an adverse employment action is not well taken. *See, e.g.*, *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012) ("[D]istrict courts do not abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment.").

action sufficient to establish a prima facie case of retaliation. Defendant is entitled to judgment as a matter of law on the retaliation claim.

3. Plaintiff's Hostile Work Environment Claim under Title VII

"To prevail on a hostile work environment claim, [a plaintiff] must prove that: 1) they belong to a protected group; 2) they were subjected to unwelcome harassment; 3) the harassment complained of was based on race; and 4) the harassment affected a term, condition, or privilege of employment." *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003) (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353-54 (5th Cir. 2001)). Such a claim "requires the presence of a work environment that a reasonable person would find hostile or abusive." *Mota v. Univ. of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 523 (5th Cir. 2001) (citation omitted). Courts must look to the "totality of [the] circumstances" to determine whether a work environment is hostile and "focus[] on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Mota*, 261 F.3d at 523-24 (quoting *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996)). Mere utterance of an "'epithet which engenders offensive feelings in an employee' is insufficient, without more, to support" liability on a Title VII hostile work environment claim. *Weller*, 84 F.3d at 194 (quoting *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 595 (5th Cir. 1995)).

The record evidence reveals the absence of a triable issue of fact underlying Plaintiff's hostile work environment claim. Plaintiff points to two statements, one describing Jackson State University as being "in the hood," and the other characterizing a black vice president at Florida A&M University as being "some old vice president." These are the only two statements Plaintiff cites during a time span of over five years. Neither statement was directed toward Plaintiff, the statements did not suggest a physical threat, and there is no evidence that either statement interfered in any way with Plaintiff's work performance. *See Mota*, 261 F.3d at 523-24 (citation omitted).

Plaintiff's reliance upon graffiti around Defendant's premises and various emails containing jokes about President Obama will not carry his summary judgment burden on the hostile work environment claim. Pl.'s Dep. 58:9-61:15, 70:12-71:10 [49-1]. The harassment underlying a hostile work environment claim "must be more than rude or offensive comments, teasing, or isolated incidents" and "[t]o survive summary judgment, the harassment must be so severe and pervasive that it destroys a [plaintiff's] opportunity to succeed in the work place." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 326 (5th Cir. 2004) (citation omitted). Plaintiff does not dispute the graffiti was promptly removed once he notified Defendant. Plaintiff also does not produce any evidence of the content of the emails or that Defendant was aware that the emails were being sent. Nor has Plaintiff produced evidence indicating that either the emails or the graffiti prevented him from succeeding in his position.

Plaintiff also contends that an in-house attorney for Defendant threatened to fire him. Pl.'s Mem. in Supp. of Resp. in Opp'n 15 [58]. Courts have repeatedly concluded that a mere threat of being fired is not sufficient to create a hostile work environment. *Roberts v. Unitrin Specialty Lines Ins. Co.*, 405 F. App'x 874, 880 (5th Cir. 2010) (determining there was insufficient evidence to support a hostile work environment claim even where the plaintiff alleged her supervisor sexually harassed her, gave her physically demanding workloads, and threatened to fire her without merit). Thus, even if the in-house attorney's statement that resigning pursuant to a voluntary reduction in force was better than getting fired could be construed as a threat to fire Plaintiff, such a threat does not support a hostile work environment claim. *See, e.g.*, *Pittman v. Gen. Nutrition Corp.*, 515 F. Supp. 2d 721, 744 (S.D. Tex. 2007), *on reconsideration in part*, No. H-04-3174, 2007 WL 1296784 (S.D. Tex. May 2, 2007) (noting that a "vague assertion that [the plaintiff's supervisor] made 'threats of termination'" was not actionable to support a hostile work environment claim under Title VII); *Townsend v. Harvey*, No. SA-05-CA-1140-OG, 2006 WL 2605710, at *6 (W.D. Tex. Sept. 11, 2006) ("[E]even a direct threat to terminate an employee, [is] legally insufficient to establish a hostile work environment.").

To the extent Plaintiff suggests that his transfer from professional recruiting to craft recruiting created a hostile work environment, the evidence again contradicts his position. Pl.'s Mem. in Supp. of Resp. to Mot. for Summ. J. 15 [58]. The evidence actually indicates Plaintiff was happy to no longer have to work under

a particular supervisor, he did not view the transfer as a demotion, and he has no complaints about the work he currently performs. Pl.'s Dep. 152:24-153:2 [63-1], 41:1-13 [49-1]; 82:7-10 [63-1]. In sum, the totality of the circumstances do not support an actionable claim for hostile work environment under Title VII, and Defendant is entitled to judgment as a matter of law.

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff has not carried his summary judgment burden with respect to his claims against Defendant. Summary judgment is appropriate.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendant Huntington Ingalls Incorporated's Motion for Summary Judgment [49] is **GRANTED**, and Plaintiff George Ray's claims against Defendant are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 14th day of July, 2014.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE